UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ANTONIO BURGESS, :
    Plaintiff :
:
v. : No. 5:23-cv-3390
:
READING PARKING AUTHORITY, :
    Defendant. :
_____

**O P I N I O N**
Defendant's Motion to Dismiss, ECF No. 12 – Denied in part, Granted in part

**Joseph F. Leeson, Jr.**                                                                             **August 6, 2024**
**United States District Judge**

**I.    INTRODUCTION**

      This case arises from the termination of Plaintiff Antonio Burgess's employment with Defendant Reading Parking Authority. According to Burgess, the Parking Authority created or relied upon a false report of him smoking marijuana, drug-tested him, and then unlawfully fired him for testing positive for cocaine. Burgess claims that the Parking Authority has racially discriminated against him and violated his constitutional rights. The Parking Authority has moved to dismiss Burgess's claims, claiming that it is entitled to Eleventh Amendment immunity from suit, or alternatively, that Burgess has failed to state a claim. As explained further below, the Court will deny and grant the motion in part, because (1) the Parking Authority has failed to show it is entitled to Eleventh Amendment immunity, and (2) Burgess has failed to state a claim.

**II.    BACKGROUND**

      The following facts are alleged in the Complaint. Burgess was hired by the Parking Authority on February 7, 2022, as a parking enforcement officer. Am. Compl. ¶ 8, ECF No. 8. Soon after his employment began, a tip was called in that Burgess was seen smoking "a 'big

blunt'" (i.e. a marijuana cigarette) while wearing his Parking Authority uniform near Reading City Hall.[1]  Am. Compl. ¶¶ 13-14.  As a result of the tip, the Parking Authority required Burgess to take a drug test on March 29, 2022.  *Id.* ¶ 25.  The hospital staff where the drug test was conducted told Burgess that his test was negative for marijuana, however, the Parking Authority told Burgess that the test was positive for cocaine.  *Id.* ¶¶ 31-32.  Burgess believed the positive test result was impossible because he "had not used cocaine in months."  *See id.* ¶ 33.  The next day, Burgess purchased another urine test at Patient First at his own expense. *Id.* ¶ 35-36. This second test was negative for cocaine. *Id.* ¶ 37.  That same day, the Parking Authority terminated Burgess's employment because of the positive drug test for cocaine. *Id.* ¶ 33.

On August 30, 2023, Burgess filed suit against the Parking Authority for violating his Fourth Amendment right to be free from unreasonable searches, as well as for racial discrimination. *See* Compl., ECF No. 1.  Burgess amended his complaint on October 23, 2023. Am. Compl., ECF No. 8.  The Parking Authority moved to dismiss the Amended Complaint for failure to state a claim and lack of subject matter jurisdiction, claiming the Parking Authority is entitled to Eleventh Amendment immunity.  Mot., ECF No. 12.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction – Review of Applicable Law

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549

---

[1]   Burgess avers that this tip was false and unreliable because there was no information about "who the informant was, the reliability of the information, or the basis of the knowledge." *Id.* ¶ 23.

F.2d 884, 891 (3d Cir. 1977)). "[A] court must first determine whether the movant presents a facial or factual attack" because the distinction determines the standard of review. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3). A factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise presents competing facts." *Aichele*, 757 F.3d at 358. "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations[.]" *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in original).

      **B.**      **Motion to Dismiss for Failure to State a Claim – Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555

3
080524

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

C. **Section 1983[2] – Review of Applicable Law**

42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

D. *Monell* **Claim – Review of Applicable Law**

"Local governing bodies . . . may be sued where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lebie v. Borough*, No. 13-cv-6819, 2014 U.S. Dist. LEXIS 68207, 2014 WL 2085518, at *2 (E.D. Pa. May 16, 2014) (quoting *Monell*, 436 U.S. at 690). "Liability is imposed when the policy or custom itself violates the Constitution, or where the policy or custom is the 'moving force' behind a constitutional violation by an employee of the local body." *Id.* (citing *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

"A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A custom may exist when, 'though not authorized by law, such practices of state officials are so permanent and well settled that they operate as law.'" *Id.* (quoting *Regan v. Upper Darby Township*, 363 F. App'x 917, 923 (3d Cir. 2010)). "Custom requires proof of knowledge and

---

[2] Although Burgess initially pleaded his race discrimination claim as one under § 1981, the Court has liberally construed his request for relief as one under § 1983.

acquiescence by the decisionmaker." *Robinson v. City of Philadelphia*, Civ. A. No. 15-1574, 2015 U.S. Dist. LEXIS 139539, 2015 WL 5965003, at *7 (E.D. Pa. Oct. 13, 2015) (quoting *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009)).

"It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Id.* (quoting *Andrews*, 895 F.2d at 1481); *see also id.* (concluding Third Circuit case law "unequivocally imposes on [p]laintiff an 'obligation to plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a *Monell* claim'" (quoting *Santiago v. Warminster Township*, 629 F.3d 121, 135 n.11 (3d Cir. 2010))).

Failing to train municipal employees can also be a source of liability, but only where "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). The plaintiff must show that "the deficiency in training actually caused the [injury]." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). To prove that a municipality's failure to train or supervise amounts to deliberate indifference, Plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).

### E. Federal Discrimination Claim – Review of Applicable Law

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015). Where direct of evidence of discrimination is not

available, a plaintiff may prove discrimination using the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Ordinarily, to establish a prima facie case using this framework, a plaintiff-employee needs to demonstrate that "(1) he is a member of a protected class; (2) he was qualified for a position sought or held; (3) he was discharged from or denied the position; and (4) non-members of the protected class were treated more favorably." *Chiaradonna v. Rosemont Coll.*, No. 06-cv-1015, 2008 U.S. Dist. LEXIS 7476, at *7 (E.D. Pa. Jan. 31, 2008) (citing *McDonnell*, 411 U.S. at 802). At the motion to dismiss stage, a plaintiff is not required "to prove the elements of a *prima facie* case," but at the very least, "must allege facts raising a reasonable expectation discovery will reveal evidence of the necessary elements." *See Prince v. Trumark Fin. Credit Union*, No. 22-3097, 2022 U.S. Dist. LEXIS 189670, at *7 (E.D. Pa. Oct. 18, 2022).

IV. ANALYSIS

For the reasons that follow, the Court will deny the Parking Authority's motion to dismiss for lack of subject matter jurisdiction, because the Parking Authority has failed to show it is entitled to Eleventh Amendment immunity. However, the Court will grant the Parking Authority's motion to dismiss in all other respects, because Burgess has failed to state a plausible claim for relief.

A. **The Parking Authority has not met its burden to show it is entitled to Eleventh Amendment immunity**

"[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). In order to determine if the Parking Authority is entitled to Eleventh Amendment immunity, the Court must determine whether the Parking Authority is an "arm of the State," such that it is entitled to sovereign immunity. *See Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016)

(explaining that an "arm of the state . . . falls within the ambit of the Eleventh Amendment") (internal marks omitted)).  If the Parking Authority more closely resembles a local agency, rather than an extension of the state, the immunity does not apply. Ultimately, the Parking Authority bears the burden of proving it is entitled to Eleventh Amendment immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Christy v. Pa. Tpk. Comm'n,* 54 F.3d 1140, 1144 (3d Cir. 1995) ("The party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'")).

Although few courts have addressed this precise issue, one judge in this district previously held that a Parking Authority in Pennsylvania is a "local agency" not entitled to Eleventh Amendment immunity.  *See Five Star Parking v. Philadelphia Parking Auth., 662 F. Supp. 1053, 1054 (E.D. Pa. 1986).  Additionally, in other proceedings the Philadelphia Parking Authority classified itself as a local agency.  See In re Odom*, 571 B.R. 687, 694 (Bankr. E.D. Pa. 2017) (explaining that the Philadelphia Parking Authority had waived any potential Eleventh Amendment immunity by admitting it was a local agency, not a state agency or instrumentality). However, the determination is made by courts on a case-by-case basis.

In *Five Star Parking v. Philadelphia Parking Authority*, the court applied factors from *Urbano v. Board of Managers of New Jersey State Prisons*, 415 F.2d 247 (3d Cir. 1969), to determine that "the structure and functions of the [Parking] Authority could not properly be characterized as partaking of the sovereignty of the Commonwealth." 662 F. Supp. at 1054.  In *Urbano*, the Third Circuit used nine factors to determine whether an entity was close enough to a state agency to entitle it to Eleventh Amendment immunity. *See Urbano*, 415 F.2d at 251. These factors ultimately evolved into the *Fitchik* factors, which are still used by the Third Circuit today.

*See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989). The factors, which are treated as a "fact-intensive, three-step balancing test," are as follows:

> (1) the funding factor: whether the state treasury is legally responsible for an adverse judgment entered against the alleged arm of the State; (2) the status under state law factor: whether the entity is treated as an arm of the State under state case law and statutes; and (3) the autonomy factor: whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control.

*See Maliandi,* 845 F.3d at 83 (citing *Fitchik*, 873 F.2d at 659).

Here, the Parking Authority has failed to make any showing under the *Fitchik* factors. The pleadings and briefs in this case simply do not contain enough facts for the Court to appropriately apply the balancing test at this juncture. Given that the burden under this test falls solely to the Parking Authority, the Court cannot grant the Parking Authority immunity at this time. However, the Court is reticent to make a final determination about the status of the Parking Authority as either a state or local entity when neither party has addressed the *Fitchik* factors. Therefore, although the Court will deny the Parking Authority's motion to dismiss on this basis, the Parking Authority may re-assert this defense after conducting factual discovery on this issue, if this case continues to progress.

  **B.**  **Burgess has failed to state a *Monell* claim**

Burgess's *Monell* claim is primarily premised on his assertion that the Parking Authority "acted pursuant to a policy, practice or custom of not acting with reasonable suspicion in requiring employees or probationary employees to take drug tests." *See* Am. Compl. ¶ 26. In other words, he claims that the Parking Authority maintained a custom[3] which deprived him of his constitutional rights, specifically those under the Fourth Amendment, which guarantees

---

[3] Since Burgess does not allege any facts suggesting that the Parking Authority established a formal policy condoning suspicionless drug-testing of employees, the Court will focus instead on whether Burgess sufficiently alleges that the Parking Authority adopted a custom of doing so.

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Alternatively, Burgess claims that the Parking Authority "failed to train its employees to act with reasonable suspicion in requiring employees or probationary employees to take a drug test." Am. Compl. ¶ 27.  To support these claims, Burgess alleges that "[t]here was a pattern of similar issues toward other employees or probationary employees." *Id.* ¶ 28.

Even assuming that Burgess has shown a potential violation of his Fourth Amendment rights,[4] he has failed to state a proper *Monell* claim against the Parking Authority for adoption of an unconstitutional custom.  Burgess does not include any facts to support the existence of a custom adopted by the Parking Authority to drug-test its employees without reasonable suspicion, nor does he include any facts suggesting a direct link between this custom and the decision to drug-test him, such that the custom was a "moving force" behind his constitutional deprivation.  *See Jackson v. Moore*, No. 18-0785, 2018 U.S. Dist. LEXIS 145718, at *7-9 (E.D. Pa. Aug. 27, 2018) (dismissing the plaintiffs' *Monell* claim where the plaintiffs "simply repeat[ed] the legal requirements for a *Monell* claim without identifying any facts to support the claim[,]" and likewise failed to plead "facts to support the causation requirement of a *Monell* claim") (internal marks and citations omitted)).  Instead, Burgess merely alleges that the decision to drug-test him was done so without reasonable suspicion, and then concludes that this was a custom of the Parking Authority.  This is insufficient.

---

[4]  Burgess believes that the tip received by the Parking Authority was either (1) false or (2) non-existent. *See* Am. Compl. ¶¶ 13, 18, 24 ("Plaintiff believes and therefore avers that RPA management made up the false tip[.]").  Based on this belief, Burgess alleges that the drug test was suspicionless, conducted by the Parking Authority to "look at other possible drugs" in his system, and violated his Fourth Amendment rights.  At this stage, the Court will assume without deciding that Burgess has alleged an infringement of his Fourth Amendment rights in order to narrow the focus on whether Burgess has stated a proper *Monell* claim.

Additionally, Burgess has not shown that the Parking Authority failed to train its employees to act with reasonable suspicion when administering drug tests.  As previously mentioned, Burgess alleges that the Parking Authority has failed to train its employees and vaguely asserts that "[t]here was a pattern of similar issues toward other employees or probationary employees."  However, these conclusory allegations are insufficient to state a *Monell* claim based on a failure-to-train theory.  First, Burgess fails to mention whether the Parking Authority was on notice of its allegedly unconstitutional behavior.  *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").  Additionally, other than simply asserting that there was a "pattern of similar issues[,]" the Complaint is devoid of facts that show any past instances of similar conduct by the Parking Authority, let alone that suggest a pattern of unconstitutional behavior.  *See Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) ("A pattern of similar constitutional violations is typically necessary to demonstrate deliberate indifference for purposes of failure to train.").  Therefore, Burgess has failed to state a plausible *Monell* claim under either theory of liability.

   **C.**  **Burgess has failed to state a race discrimination claim**

Burgess admits that he cannot state a discrimination claim under Section 1981, because this statute "does not provide a private or implied cause of action against a local government."  *See* Resp. at 11 (citing *Jett v. Dallas Indep. Sch. Dist.* 491 U.S. 701, 735-36 (1989)).  Burgess asks to replead his Section 1981 claim as a Section 1983 claim.  However, Section 1983 does not provide substantive rights, but is rather a vehicle for vindicating violations of other federal rights.  However, given that this case is in the context of employment, the Court will very liberally

construe Burgess's discrimination claim as one pursuant to Title VII.  Nonetheless, viewed in the light most favorable to Burgess, he has failed to allege sufficient facts of discrimination to allow the Court to conclude that the Parking Authority treated him less favorably than others based upon his race.

While Burgess is not required to prove the elements of a prima facie case at this stage, he must, at the very least, allege facts which raise a reasonable expectation that discovery will reveal evidence of the necessary elements of his claim.  *See Prince v. Trumark Fin. Credit Union*, No. 22-3097, 2022 U.S. Dist. LEXIS 189670, at *7 (E.D. Pa. Oct. 18, 2022).  Here, to recap the facts around his race, Burgess, an African-American man, "believes" that "Parking Authority management made up the false tip" that he was smoking marijuana on the job "given that they viewed him as an African-American who stuck up for his and other employees' rights." *See* Am. Compl. ¶ 24.[5]  Although Burgess was told he was fired for testing positive for cocaine, he asserts that "[i]t was illegal for [him] to be let go because of the results of the drug test," and he "believes he was fired because of his race and color."  Am. Compl. ¶¶ 41-42.  However, these "vague and conclusory allegations" are insufficient to show that the Parking Authority intentionally discriminated against Burgess based on his race. *See Frederick v. Southeastern Pa. Transp. Auth.*, 892 F. Supp. 122, 125 (E.D. Pa. 1995) (explaining that "vague and conclusory allegations" are insufficient to plead a discrimination claim) (internal marks and citations omitted)).  The Court cannot infer race-based discrimination simply from Burgess's subjective

---

[5]  Relatedly, Burgess claims that after he "often stuck up" for other Parking Authority employees, and "[b]ecause of his activity in this regard, [his] probation was extended." Am. Compl. ¶¶ 9-10.  Specifically, on March 24, 2022, Burgess "received a written coaching indicating his probation was recommended as being extended[,]" and he refused to "sign the paper for coaching" because he disagreed.  *Id*. ¶ 11.  It is unclear from the Complaint when Burgess was initially placed on "probation," what "probationary" employment status entails, or how these facts connect to his claims.

belief that the Parking Authority's decision to terminate him was motivated by racial bias. *See Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 702 (W.D. Pa. 2010) ("An inference of race-based discrimination cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action.").

Further, Burgess has not sufficiently pled the existence of other similarly situated individuals outside of his protected class receiving preferential treatment. Burgess asserts that he was "treated differently from similarly-situated Caucasian employees in the same or similar positions who were not given drug tests on unreliable tips[,]" and "Caucasian managers in a similar position would not have been and have not been fired for the same or similar activity in this region." *Id.* ¶¶ 47-48. However, these assertions are primarily legal conclusions couched as factual allegations, and therefore insufficient to support an inference of intentional discrimination. *See Gross v. R.T. Reynolds, Inc.*, 487 Fed. Appx. 711, 716-717 (3d. Cir. 2012) (explaining that conclusory allegations of favoritism to non-minority employees failed to support an inference of discrimination against the plaintiff). For instance, Burgess does not give any specific examples of the Parking Authority treating employees outside of his protected class differently by (1) not drug-testing these individuals after receiving tips of their illegal drug use, or (2) not firing these individuals after their drug tests came back positive for illegal drug use. Therefore, because the Court need not accept as true Burgess's bare, conclusory allegation that his termination was motivated by racial bias, and the Complaint is devoid of specific instances of preferential treatment to employees outside of Burgess's protected class, Burgess has failed to state a plausible discrimination claim.

**D.     Amendment**

Although Burgess has failed to plead sufficient facts to support his *Monell* claim or race discrimination claim, the Court cannot conclude at this time that he is entirely incapable of doing so. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a court should allow amendment of a complaint unless doing so would be inequitable or futile). Accordingly, Burgess's claims are dismissed without prejudice to his right to file an amended complaint alleging facts to support his claim that his termination was motivated by racial bias and/or to support his claim that the Parking Authority failed to properly train its employees or acted pursuant to an unconstitutional custom.

**V.     CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is denied in part and granted in part. Burgess's claims are dismissed without prejudice for failure to state a claim. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge